**\*E-FILED 4/27/06\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DONALD HUDSON,<br><br>　　　　Plaintiff,<br>　v.<br>CITY OF SAN JOSE, et al.,<br><br>　　　　Defendants.<br>　　　　　　　　　　　　　　　／ | NO. C-05-03015 RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiff Donald Hudson alleges that three San Jose Police officers subjected him to excessive force following a routine traffic stop. Each officer moves for summary judgment, contending that the evidence shows that his use of force was reasonable under the circumstances. The City of San Jose moves for summary judgment on the additional grounds that there is no basis to hold it liable even in the event there is a triable issue of fact as to whether the individual officers used excessive force. The matter has now been fully briefed and on April 26, 2006 the parties presented oral argument.

Because material facts are in dispute as to how the incident unfolded, the motion will be denied as to the individual defendants. As there is no evidence, on the other hand, that would support a finding of liability on the part of the City under the applicable legal principles, the motion

1

will be granted on those claims averred against it.

## II. BACKGROUND

Shortly before midnight on July 11, 2004, Donald Hudson was stopped by San Jose police officer Joseph Freitas for driving a vehicle with an expired registration. There is no dispute that the stop itself was lawful. According to Hudson's version of events, the following then took place: Hudson exited his vehicle and walked to the front of the police car, near its front right tire. Officer Freitas informed Hudson that he was going to search him for weapons, and asked Hudson to put his hands on the hood of the police car. Hudson complied. Officer Freitas searched Hudson, pulling various items from his pockets. Freitas threw a matchbook (apparently from Hudson's pockets) in front of Hudson.

Officer Freitas at that point had not informed Hudson he was under arrest, but Hudson believed that he "probably was going to jail," because Freitas had mentioned something about Hudson having a "restricted suspended license." Hudson picked up the matchbook in order, he contends, to see the phone number of the bail bondsmen advertised on its cover.

Hudson denies that he was attempting to put the matchbook close to his mouth, but Officer Freitas apparently believed otherwise. Hudson heard Freitas say, "He is going for his mouth." At that point, Freitas began to "choke" Hudson. In Hudson's words: "He put me in a choke and I thought I was going to die . . . . he was behind me . . . he put his arm around me and was squeezing hard." Hudson acknowledges that he then "grabbed ahold of [Freitas's] arm" in an attempt "to stop the choke hold" and that he "never took his hands off of [Freitas's] arm."

Hudson recounts that Officer Freitas continued to choke him, pulling him backwards in the process. The two men tripped on a curb and fell. Freitas turned as they fell, and landed on top of Hudson, who ended up face down. Hudson was then tased by Officer Ryan Brennan, who had arrived on the scene. Hudson contends he then "lost his ability to breathe." Hudson testified that he has no real recollection of subsequent events, but there is no dispute that he was tased twice by Officer Brennan and that a third officer, Pete Gonzalez, who arrived in the course of the incident, then struck Hudson more than once with a baton.

2

1   Brian Matoba, a friend of Hudson, testified that he witnessed the incident and saw that
2 Hudson was not struggling after he and Officer Freitas hit the ground, because Freitas "pretty much
3 had him detained." To Matoba, it appeared as if Hudson "was trying to grasp for air" and that he
4 was "pretty much incapacitated." Matoba described an officer striking Hudson with a baton "about
5 ten" times. Matoba used the phrase "wailing on him" to describe the baton blows and offered the
6 rhetorically descriptive characterization that it looked like the officer "went psycho." Mark Riller,
7 another friend of Hudson, testified that he too witnessed the incident, and recalled telling an officer
8 at the scene, "I saw Donny [Hudson] getting the crap beaten out of him."

## III. LEGAL STANDARDS

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-324 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of his case with respect to which he bears the burden of proof at trial. *Id.* at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, i.e., "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 111 S.Ct. 2419, 2434-35 (1991) (citing *Anderson*, 477 U.S. at 255); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986); *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 630 (9th Cir. 1987). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service*, 809 F.2d at 631. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

### IV. DISCUSSION

A. <u>Triable Issues of Fact Exist as To Whether The Individual Defendants Used Excessive Force</u>

Hudson contends that the individual defendants violated 42 U.S.C. § 1983 by exercising unreasonable and excessive force against him, in contravention of his rights under the Fourth And Fourteenth Amendments to the United States Constitution.[1] The basic premise behind the individual defendants' motions for summary judgment is that because Hudson was resisting arrest, the force

---

[1] Hudson also asserts a claim for assault and battery, a freestanding claim for "excessive force," and a negligence claim against the individual defendants. For purposes of this motion, the viability of the assault and battery claim stands or falls with the section 1983 claim, because the core issue of whether there was excessive force underlies both. Defendants point out that the claim for "excessive force" does not appear to be a viable independent cause of action, but agree that it should be treated together with the section 1983 claim. Defendants do not address the negligence claim alleged against the individual officers.

4

they each employed cannot be found objectively unreasonable or excessive.

Defendants are correct that the reasonableness of their conduct must be measured under an *objective* standard "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Conner*, 490 U.S. 386, 396 (1989). As such, defendants are correct that the *subjective* belief and intent Hudson may have held during the course of the incident is irrelevant to the analysis.

What does not follow, however, is that the objective test is to be applied only to defendants' version of events. Defendants' recitation of the facts is drawn largely from their *own* testimony regarding what happened, including the sequence of events, and the level of force used. Defendants turn to Hudson's version of events only when, and only to the extent that, "it corroborates *many* of the facts testified to by Freitas." Defendants' Brief at p.10 (emphasis added).

Were a trier of fact to accept defendants' rendition and characterization of events as accurate, it might very well be found that defendants did not exercise excessive force under the circumstances, or at least that they are entitled to qualified immunity. But the gulf between what defendants say happened, and what Hudson and third party witnesses say happened, is significant.

In defendants' version of events, the application of force began because Hudson "stepped back towards Freitas and bumped his back into Freitas' chest area [giving] Freitas the impression that plaintiff was trying to prevent him from taking him into custody." Defendants' Brief at p.10 (emphasis added). In contrast, as set forth above, Hudson's testimony is that Officer Freitas initiated the force by beginning to choke him, shortly after stating "he is going for his mouth." Defendants stress that under an "objective" evaluation of the facts, Hudson's state of mind that he "thought" he was being subjected to a choke hold is irrelevant. While that may be so, independently of what Hudson was *thinking*, his testimony suggests that a particularly strong application of force may have be applied to his throat, inhibiting his ability to breath. Hudson's version of events also suggests that this occurred in the absence of any conduct by him that would give rise to a reasonable belief that he was trying to flee or that would otherwise warrant the level of force employed. Thus, while defendants portray what might have been an officer reasonably trying to control a resisting

5

1  suspect, Hudson describes something more akin to an unprovoked application of excessive force.[2] It
2  is for a trier of fact to judge credibility and to ascertain the facts.

3  Similarly, defendants paint a picture that the force used thereafter by Officers Brennan and
4  Gonzalez was only such as was reasonably necessary to restrain a suspect who was continuing to
5  struggle and resist.  Once again, however the evidence is in conflict.  Hudson's admission that he
6  never stopped trying to pull Officer Freitas's arm from his neck does not compel a conclusion that
7  his resistance was such that *any* level of force was thereafter acceptable, nor does it establish the
8  level of force actually used.  While the *opinions* reflected in the language used by Hudson's friends
9  to describe what they saw (e.g. "wailing") are to some degree conclusory, they imply a degree of
10 force potentially inappropriate for the level of resistance also described.

11 Defendants assert that it necessarily was not excessive for Brennan to discharge his taser gun
12 at Hudson twice, given that he was struggling on the ground with an armed fellow officer, who
13 requested that the taser be used.  There are insufficient undisputed facts, however, to reach such a
14 conclusion on summary judgment.  While Hudson's admission that he never let go of Freitas's arm
15 might be sufficient to conclude that he was continuing to "resist arrest" within the meaning of the
16 penal code, it does not mean that he was necessarily resisting with sufficient force and efficacy that
17 it was reasonably necessary to use a taser–or a baton–on him.[3]  Even in defendant's version of
18 events, it appears that Hudson was at all times pinned underneath Officer Freitas.  More importantly,
19 there is Brian Matoba's testimony that suggests that even though Hudson may have been continuing
20 to tug on Freitas's arm, Freitas "pretty much had him detained," and Hudson was "pretty much

---

[2] Defendants' motion states that Officer Freitas was attempting to control Hudson through use of a "cartoid restraint."  Defendants' Brief at p.10.  In fact, Freitas expressly disavowed that he was attempting to apply such a restraint. Freitas Tr., 27:16.  Whatever Officer Freitas's own intent may have been, it does not eliminate the factual disputes that preclude the Court from determining on summary judgment whether this was a reasonable use of force against a resisting suspect or something else.

[3] As defendants appear to understand, the testimony that Gonzalez struck Hudson with a baton "around ten"times is particularly difficult to reconcile with the notion that there are no factual disputes as to whether the level of  force was consistent with the level needed to end the resistance.  Whether that many baton blows were actually employed, and if so, whether that many blows were appropriate given Hudson's conduct, are questions of fact.

United States District Court
For the Northern District of California

incapacitated."

To be sure, "pretty much" detained or incapacitated does not mean that the officers were thereafter precluded from using *any* force to bring Hudson fully into control, but it precludes defendants from establishing as a matter of law that only reasonable force was exercised here. Again, the credibility of the witnesses and their conflicting stories must be weighed by a fact finder, and cannot be considered on summary judgment.

As defendants point out, under *Saucier v. Katz*, 533 U.S. 194 (2001) a finding that there is a jury question as to whether police officers used excessive force does not automatically dispose of the officers' contention that they are entitled to qualified immunity. In *Saucier*, the court concluded that even though there was a triable issue as to whether the level of force used was excessive by constitutional standards, under all the circumstances of that case (including the relatively low level of force that undisputedly had been used), it was not a matter of "clearly established law" that the conduct was improper. 533 U.S. at 208-209.

In this case, however, there are no undisputed facts sufficient to conclude that even if the level of force used was unlawful, defendants might have reasonably thought otherwise. Although defendants have emphasized the two-step inquiry required by *Saucier*, they have not articulated any basis on which it could be said as a matter of law on summary judgment that the force was excessive, but not so excessive that it did not violate a "clearly established right." Rather, defendants simply argue that the force was not excessive at all. As that argument depends on only one version of the facts, the individual defendants' motions must be denied.[4]

---

[4] Defendants object to the declaration of Frank H. Saunders, submitted by Hudson with his opposition, but not cited in his briefing, on grounds that the Court's order permitting Hudson to designate its expert witnesses after the deadline limited the use of such a witness to rebuttal. At the same time, there is no prohibition against offering expert declarations in opposition to summary judgment motions even from persons who have not yet been designated as expert trial witnesses. In any event, this issue is moot, because as reflected by the preceding analysis, the Court has not reached or relied on Saunders declaration, which neither adds nor detracts from the factual record relevant for purposes of summary judgment.

7

B.  The City of San Jose Is Entitled to Summary Judgment

Under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978) and its progeny, "[a] municipality or government entity cannot be found liable under section 1983 on a respondeat superior theory; such liability can be imposed only for injuries inflicted pursuant to an official government policy." *Tanner v. Heise*, 879 F.2d 572, 582 (9th Cir. 1989).

Here, defendants adequately demonstrated in their moving papers that no evidence exists to support a finding that the City may be held liable for the alleged conduct of the officers, thereby shifting the burden to Hudson to demonstrate the existence of triable issues of fact to the contrary. See *Celotex*, *supra,* 477 U.S. at 322-23.*; Anderson*, *supra*, 477 U.S. at 247-48.  Hudson has offered no evidence whatsoever that the alleged conduct of the individual defendants was undertaken pursuant to or as the result of any official governmental policy or the lack thereof.  Instead, Hudson merely *argues*, in essence, that the individual officers should have been better trained, or subject to additional general use of force policies, or additional policies specific to the use of tasers and batons. Under the factual scenario alleged by Hudson, however, the arguments he makes as to the City's liability would, in effect, reestablish *respondeat superior* liability and would entirely eliminate the limitations established in *Monell.*

Hudson places particular emphasis on the City's policies and training procedures for taser use, which were in transition shortly before this incident.  This is not a case, however, where use of a taser allegedly caused some special injury or was particularly inappropriate as a result of some characteristic of tasers.  The essence of Hudson's claim is that the officers should not have used a taser at all, because it inflicts significant pain that was not necessary under the circumstances. Hudson does not suggest, nor could he, that the officers were so untrained as to believe that the taser is painless.[5]   Thus, the issues surrounding the use of the taser in this particular case are no different conceptually or substantively than the use of the baton.  In both instances, Hudson's claim is only

---

[5]  It is undisputed that Officer Brennan had been trained in taser use.  Hudson challenges the adequacy of the training program, but only by arguing that a properly trained officer would not have used a taser in these circumstances.

8

that it was unreasonable for the officers to use such force under the circumstances.

In essence, Hudson is saying that because the officers exercised excessive force (under his version of the facts), it is possible to *infer* that the City's policies and training procedures are deficient. Standing alone, however, that inference is insufficient to create a triable issue of fact, because the same inference would exist in every excessive force case, and liability for the municipality would automatically flow from liability of the officers.  That is not the law. *See Monell*, 436 U.S. 658.  Even if Hudson succeeds in persuading a trier of fact that these officers exercised excessive force, there is no evidence that would support a finding that this was anything other than individual officers acting unlawfully.[6]

## V. CONCLUSION

The motion for summary judgment is DENIED as to individual defendants Freitas, Brennan, and Gonzalez.  The motion is GRANTED as to the City of San Jose.

IT IS SO ORDERED

Dated: April 27, 2006

RICHARD SEEBORG
United States Magistrate Judge

---

[6] Hudson's request for a continuance to permit him to obtain an admissible copy of a superceded policy on taser use is denied.  The arguments Hudson makes regarding that policy do not change the analysis.

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

Michael J. Dodson     cao.main@sanjoseca.gov

Anthony E. Pagkas     pagkas@yahoo.com, cdanjou@gmail.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

**Dated: 4/27/06**                                       **Chambers of Judge Richard Seeborg**

                                                                    **By:**      **/s/ BAK**

United States District Court
For the Northern District of California